1    **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8

9    Ronda Lee Laier,                          No. CV-14-02478-PHX-NVW

10                        Plaintiff,            **ORDER**

11   v.

12
     Carolyn W. Colvin, Acting Commissioner
13   of Social Security,

14                        Defendant.

15

16          Plaintiff Ronda Lee Laier seeks review under 42 U.S.C. § 405(g) of the final

17   decision of the Commissioner of Social Security ("the Commissioner"), which denied her

18   disability insurance benefits and supplemental security income under sections 216(i),

19   223(d), and 1614(a)(3)(A) of the Social Security Act.  Because the decision of the

20   Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based

21   on legal error, the Commissioner's decision will be affirmed.

22   **I.    BACKGROUND**

23          Plaintiff was born in October 1958, has a limited education, and is able to

24   communicate in English.  She worked as a dietary manager for a nursing home in Utah

25   for many years before moving to Arizona to care for her ill father.  In Arizona she

26   worked as a security guard and was promoted to a supervisor position.  Her employment

27   ended in 2010.  At the time of the November 2012 hearing, Plaintiff was living in a two-

28   story house in El Mirage, Arizona, with her husband, her 12-year-old daughter, and

1   Plaintiff's father.  Plaintiff's husband is disabled due to short-term memory loss caused

2   by brain injury.   Together, Plaintiff and her husband care for Plaintiff's father and

3   daughter.

4        In May 2011, Plaintiff applied for disability insurance benefits and supplemental

5   security income.  Her amended alleged onset date of disability is September 1, 2010.  On

6   November 2, 2012, she appeared with her attorney and testified at a hearing before the

7   ALJ in Phoenix, Arizona.   A vocational expert also testified.   Plaintiff's attorney

8   explained to the ALJ that Plaintiff has moderate degenerative disc disease, which causes

9   her some problems, but her mental impairments (*i.e.*, depression, anxiety, panic disorder)

10  are more severe.

11       On February 22, 2013, the ALJ issued a decision that Plaintiff was not disabled

12  within the meaning of the Social Security Act.  The Appeals Council denied Plaintiff's

13  request for review of the hearing decision, making the ALJ's decision the

14  Commissioner's final decision.  On November 7, 2014, Plaintiff sought review by this

15  Court.

16  **II.     STANDARD OF REVIEW**

17       The district court reviews only those issues raised by the party challenging the

18  ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court

19  may set aside the Commissioner's disability determination only if the determination is

20  not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d

21  625, 630 (9th Cir. 2007).   Substantial evidence is more than a scintilla, less than a

22  preponderance, and relevant evidence that a reasonable person might accept as adequate

23  to support a conclusion considering the record as a whole.  *Id.*  In determining whether

24  substantial evidence supports a decision, the court must consider the record as a whole

25  and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

26  As a general rule, "[w]here the evidence is susceptible to more than one rational

27  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

28  upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted);

1   *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence

2   is susceptible to more than one rational interpretation, we must uphold the ALJ's findings

3   if they are supported by inferences reasonably drawn from the record.").

4          Harmless error principles apply in the Social Security Act context. *Molina v.*

5   *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

6   substantial evidence supporting the ALJ's decision and the error does not affect the

7   ultimate nondisability determination. *Id.* The claimant usually bears the burden of

8   showing that an error is harmful. *Id.* at 1111.

9   **III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

10         To determine whether a claimant is disabled for purposes of the Social Security

11  Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

12  the burden of proof on the first four steps, but the burden shifts to the Commissioner at

13  step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

14         At the first step, the ALJ determines whether the claimant is engaging in

15  substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not

16  disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant

17  has a "severe" medically determinable physical or mental impairment.

18  § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step

19  three, the ALJ considers whether the claimant's impairment or combination of

20  impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P

21  of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to

22  be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the

23  claimant's residual functional capacity and determines whether the claimant is still

24  capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not

25  disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step,

26  where she determines whether the claimant can perform any other work based on the

27  claimant's residual functional capacity, age, education, and work experience.

28

1 § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is

2 disabled. *Id.*

3       At step one, the ALJ found that Plaintiff meets the insured status requirements of

4 the Social Security Act through December 31, 2015, and that she has not engaged in

5 substantial gainful activity since September 1, 2010, the amended onset date. At step

6 two, the ALJ found that Plaintiff has the following severe impairments: multilevel

7 lumbar and thoracic degenerative disc disease, hip bursitis, a dysthymic disorder, a

8 generalized anxiety disorder, and cannabis abuse. At step three, the ALJ determined that

9 Plaintiff does not have an impairment or combination of impairments that meets or

10 medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

11 Appendix 1.

12       At step four, the ALJ found that Plaintiff:

13
14     has the residual functional capacity to perform a full range of work at all
exertional levels but with the following nonexertional limitations: needs to
15     work in a job where contact with the general public or co-workers is
occasional.

16 The ALJ further found that Plaintiff is unable to perform any past relevant work. At step

17 five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and

18 residual functional capacity, there are jobs that exist in significant numbers in the national

19 economy that Plaintiff can perform.

20 **IV.  ANALYSIS**

21       **A.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

22       In evaluating the credibility of a claimant's testimony regarding subjective pain or

23 other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine

24 whether the claimant presented objective medical evidence of an impairment that could

25 reasonably be expected to produce some degree of the pain or other symptoms alleged;

26 and, if so with no evidence of malingering, (2) reject the claimant's testimony about the

27 severity of the symptoms only by giving specific, clear, and convincing reasons for the

28

1    rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In making a credibility

2    determination, an ALJ "may not reject a claimant's subjective complaints based solely on

3    a lack of objective medical evidence to fully corroborate the claimant's allegations."

4    *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal

5    quotation marks and citation omitted).  But "an ALJ may weigh inconsistencies between

6    the claimant's testimony and his or her conduct, daily activities, and work record, among

7    other factors."  *Id.*  The ALJ must make findings "sufficiently specific to permit the court

8    to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v.*

9    *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d

10   1035, 1039 (9th Cir. 2008).

11          First, the ALJ found that Plaintiff's medically determinable impairments could

12   reasonably be expected to cause the alleged symptoms.  Second, the ALJ found

13   Plaintiff's statements regarding the intensity, persistence, and limiting effects of the

14   symptoms not credible to the extent they are inconsistent with the ALJ's residual

15   functional capacity assessment.

16          At the ALJ hearing, Plaintiff's attorney stated that Plaintiff's mental impairments

17   are more severe than her degenerative disc disease, which he described as moderate.  The

18   attorney said Plaintiff suffers from dysthymic disorder, major depressive disorder,

19   generalized anxiety disorder, and the panic disorder of agoraphobia.  Plaintiff has not

20   received treatment from a mental health professional.  The only mental health treatment

21   Plaintiff has received is medication prescribed by her primary care physician, which

22   consists of alprazolam (generic Xanax) for anxiety.[1]

23

24

25          [1] Plaintiff's primary care physician's notes for her first office visit on December
     22, 2010, indicate that Plaintiff said Xanax had helped her chronic anxiety in the past.
26   The physician's notes for January 7, 2011, state that Plaintiff explained her positive urine
     drug screen was caused by taking Xanax prescribed for her husband and that she had not
27   been prescribed it previously.

28

1    Plaintiff testified that she is overwhelmed with anxiety for two to three hours

2  almost every day, but her prescription medication helps.  When asked about problems

3  other than anxiety that prevent her from working, she said she feels she cannot "process

4  quick enough," she "falls apart" when told she is not doing what she should be doing, and

5  she gets agitated by loud noises and not understanding her daughter's homework.

6  Plaintiff testified that being around other people makes her feel that she is being judged

7  and causes her to panic.

8    Plaintiff said she left her last job in July or August 2010 because she was passing

9  out and getting sharp pains that would radiate through her back, and she was passing out

10  about twice a week.  She also testified that when she began having pain she thought she

11  was having a gallbladder attack, but an endoscopy and a colonoscopy did not reveal

12  anything.  When she returned to work, she was terminated because her supervisor felt she

13  could not do the tasks she was given.  She looked for other similar work, but no one was

14  hiring at the time.

15    Plaintiff said she quit physical therapy after two times because the pain in her back

16  was overwhelming.  She testified that she does not drive because she is afraid of blacking

17  out, which had happened three or four times a month since 2010.  She said that she was

18  scheduled for an appointment with a neurologist on November 8, 2012, to address her

19  blacking out.

20    Plaintiff testified that the longest she can walk without stopping is 20 minutes

21  because she gets tired.  She said she can sit only 15-20 minutes before shifting positions.

22  She said she can stand only ten minutes because standing causes her feet to swell.  She

23  also said her feet swell every day for most of the day so she must elevate her feet.  She

24  also testified that she was referred to a neurologist to determine what is causing her feet

25  to swell.

26    The ALJ found that Plaintiff's credibility is diminished by the following:  (1)

27  Plaintiff has engaged in a somewhat normal level of daily activity and interaction; (2) her

28  limited range of activities does not appear to be caused by any established impairment;

1    (3) Plaintiff's allegations regarding the severity of her symptoms and limitations are

2    greater than expected in light of the objective medical record and conservative treatment;

3    and (4) Plaintiff's hearing testimony was vague and inconsistent.  The ALJ noted that

4    Plaintiff refused mental health treatment recommended by her primary care physician and

5    did not report her feet swelling until October 2012.  The ALJ also noted that there are no

6    medical records corroborating her alleged episodes of fainting.

7    Thus, the ALJ provided specific, clear, and convincing reasons supported by

8    substantial evidence for discrediting Plaintiff's subjective symptom testimony.

9    **B.    The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.**

10    **1.    Legal Standard**

11    In weighing medical source opinions in Social Security cases, the Ninth Circuit

12    distinguishes among three types of physicians:  (1) treating physicians, who actually treat

13    the claimant; (2) examining physicians, who examine but do not treat the claimant; and

14    (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v.*

15    *Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must give weight to the

16    treating physician's subjective judgments in addition to his clinical findings and

17    interpretation of test results.  *Id.* at 832-33.  Where a treating physician's opinion is not

18    contradicted by another physician, it may be rejected only for "clear and convincing"

19    reasons, and where it is contradicted, it may not be rejected without "specific and

20    legitimate reasons" supported by substantial evidence in the record.  *Id.* at 830; *Orn v.*

21    *Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion

22    of a treating physician and an examining physician, the ALJ may not reject the opinion of

23    the treating physician without setting forth specific, legitimate reasons supported by

24    substantial evidence in the record).

25    Further, an examining physician's opinion generally must be given greater weight

26    than that of a non-examining physician.  *Lester*, 81 F.3d at 830.  As with a treating

27    physician, there must be clear and convincing reasons for rejecting the uncontradicted

28    opinion of an examining physician, and specific and legitimate reasons, supported by

1    substantial evidence in the record, for rejecting an examining physician's contradicted

2    opinion. *Id.* at 830-31.

3        Factors that an ALJ may consider when evaluating any medical opinion include

4    "the amount of relevant evidence that supports the opinion and the quality of the

5    explanation provided; the consistency of the medical opinion with the record as a whole;

6    [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.  In

7    deciding weight to give any medical opinion, the ALJ considers not only whether the

8    source has a treating or examining relationship with the claimant, but also whether the

9    treatment or examination is related to the alleged disability, the length of the relationship,

10   frequency of examination, supporting evidence provided by the source, and medical

11   specialization of the source.  20 C.F.R. § 404.1527(c).  Generally, more weight is given

12   to the opinion of a specialist about medical issues related to his area of specialty than to

13   the opinion of a source who is not a specialist.  20 C.F.R. § 404.1527(c)(5).  The ALJ

14   may discount a physician's opinion that is based only the claimant's subjective

15   complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d

16   1190, 1195 (9th Cir. 2004).  The opinion of any physician, including that of a treating

17   physician, need not be accepted "if that opinion is brief, conclusory, and inadequately

18   supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219,

19   1228 (9th Cir. 2009).

20                  **2.     Treating Primary Care Physician Mason J. Roy, M.D.**

21       Plaintiff alleges onset of disability on September 1, 2010.  Dr. Roy began treating

22   Plaintiff on December 22, 2010, for chronic arthritis pain in her knees and hips and for

23   chronic anxiety.  He prescribed alprazolam (generic Xanax) for anxiety and nothing for

24   pain.  On January 7, 2011, Plaintiff reported pain on the right side of her lower rib cage.

25   On January 25, 2011, Dr. Roy referred Plaintiff to a surgeon for assessment of her

26   continued right upper abdominal pain and renewed her prescription for alprazolam.  On

27   March 7, 2011, Dr. Roy referred Plaintiff to physical therapy for lumbago (lower back

28   pain), hip pain, and thoracic back pain, ordered hip and thoracic spine x-rays, and

1    prescribed carisoprodol instead of alprazolam, which Plaintiff reported was of "no help."

2    On March 23, 2011, Dr. Roy prescribed alprazolam for anxiety and did not prescribe

3    carisoprodol.  On April 11, 2011, Dr. Roy noted that Plaintiff's anxiety was better, but

4    she requested an increase in the number of tablets of alprazolam per day, and also that

5    she was getting pain medications from "geriatric md but is running out of meds."  Dr.

6    Roy prescribed alprazolam for anxiety and lumbago and hydrocodone-acetaminophen for

7    anxiety and lumbago.  He also ordered blood tests and noted that Plaintiff was to have her

8    first physical therapy session the next day.  On May 9, 2011, Dr. Roy noted that Plaintiff

9    was "feeling a little better with meds and PT."[2]  He also noted that Plaintiff was applying

10   for Social Security disability, he had completed the physical evaluation for her, and he

11   would complete the mental evaluation next visit.  He ordered refills of alprazolam and

12   hydrocodone-acetaminophen and gave Plaintiff information regarding mental health self-

13   referral.  On June 7, 2011, Dr. Roy noted Plaintiff was "doing reasonably well on current

14   regimen," she requested her alprazolam prescription be increased, and she decided not to

15   go to behavioral health "due to trust issues."   He ordered refills of alprazolam and

16   hydrocodone-acetaminophen for anxiety and lumbago.

17         After slightly less than six months of treating Plaintiff as her primary care

18   physician, Dr. Roy completed a Residual Functional Capacity Questionnaire and a

19   Mental Capacity Assessment, both dated June 7, 2011.  He identified Plaintiff's diagnosis

20   as anxiety, depression, back pain, and hip pain, and her prognosis as fair.  He identified

21   Plaintiff's symptoms as neck pain, thoracic back pain, low back pain, and anxiety.  Dr.

22   Roy opined that Plaintiff's symptoms are severe enough to constantly interfere with the

23   attention and concentration required to perform simple work-related tasks.  He also

24   opined that the maximum distance Plaintiff can walk is 50 feet, the maximum time

25   Plaintiff can sit at one time is 10 minutes, and the maximum time Plaintiff can stand/walk

26         [2] Vibrant Care Rehabilitation records show that Plaintiff was assessed for physical
27   therapy on April 26, 2011, was treated on April 27, 2011, and did not return after April
     27, 2011.
28

1
2
3
4
5
6
7

at one time is 5 minutes.  Dr. Roy further opined that in an 8-hour work day, the total amount of time Plaintiff can sit is one hour and the total amount of time she can stand/walk is one hour.  He opined that Plaintiff will need to take unscheduled 15-minute breaks every 20-30 minutes.  He opined that she can occasionally lift and carry less than 10 pounds, but never more, and she can do repetitive reaching, handling, or fingering 20-25% of an 8-hour workday.  He further opined that Plaintiff is likely to be absent more than four times a month as a result of her impairments.

8
9
10
11
12
13
14
15
16
17

On the Mental Capacity Assessment, Dr. Roy found slight or moderate limitations in all but three areas.  He opined that Plaintiff has marked limitation in her ability to maintain attention and concentration for extended periods, her ability to complete a normal workweek without interruptions from psychologically based symptoms, and her ability to set realistic goals or make plans independently of others.  He also opined that Plaintiff would likely have more than four absences in an average month.   For medical/clinical findings that support this assessment, Dr. Roy wrote, "Extensive medical history."  Dr. Roy could not have been referring to his six-month treatment relationship with Plaintiff, but his treatment notes do not indicate that he had any knowledge of Plaintiff's past mental health history.

18
19
20
21
22
23
24

After June 7, 2011, Dr. Roy continued to treat Plaintiff through October 2012, primarily for lumbago, anxiety, and insomnia.  On September 7, 2011, Plaintiff reported that her anxiety had improved with the increased amount of alprazolam, and she continued home exercises and physical therapy,[3] but it was not helping.  Dr. Roy referred Plaintiff to an orthopedic specialist and prescribed hydrocodone-acetaminophen, alprazolam, and amitriptyline.  On October 7, 2011, Dr. Roy noted that physical therapy was ongoing, and the appointment with the orthopedic specialist was scheduled for

25
26
27
28

---

[3] The record does not show Plaintiff received physical therapy after April 27, 2011.  On November 28, 2011, when Plaintiff was first seen at the CORE Institute, she reported having recently completed 8 sessions of physical therapy with minimal improvement.

1   November 28, 2011.  He renewed her prescription for hydrocodone-acetaminophen with

2   refills to last for three months.  On January 11, 2012, Dr. Roy noted that Plaintiff's

3   anxiety and insomnia were worse recently due to family issues, she had an MRI

4   completed, and she would call to schedule a follow-up appointment with the orthopedic

5   specialist.  He prescribed alprazolam, Ambien, and hydrocodone-acetaminophen with

6   refills to last for three months.[4]  On February 10, 2012, Dr. Roy saw Plaintiff again and

7   noted that she was stable on her current medication regime and had no current

8   complaints. On March 12, 2012, Dr. Roy noted that Plaintiff requested increased anxiety

9   medication and she reported the orthopedic physician assistant recommended a possible

10  ablation procedure.  Plaintiff continued to see Dr. Roy monthly through October 2012

11  and received prescription medications for anxiety and low back pain.

### 3.       Treating Pain Management Physician Eric Feldman, M.D.

12
13          On February 14 and 24, 2012, Dr. Feldman, of the CORE Institute, performed

14  bilateral L4-5 transforaminal epidural steroid injections on Plaintiff.  Plaintiff was seen

15  by a physician assistant at the CORE Institute on November 28, 2011, January 23, 2012,

16  March 1, 2012, and April 19, 2012.  It does not appear that Dr. Feldman actually

17  examined Plaintiff before August 22, 2012.

18          On August 22, 2012, Dr. Feldman saw Plaintiff, ordered physical therapy, and

19  completed a Residual Functional Capacity Questionnaire.  He identified Plaintiff's

20  diagnosis as chronic low back pain and her prognosis as fair.  He identified her symptoms

21  as low back and leg pain and fatigue.  Dr. Feldman opined that Plaintiff's symptoms are

22  severe enough to constantly interfere with the attention and concentration required to

23  perform simple work-related tasks.  He also opined that the maximum distance Plaintiff

24  can walk is 1-2 city blocks, the maximum time Plaintiff can sit at one time is 30 minutes,

25  and the maximum time Plaintiff can stand/walk at one time is 5-10 minutes.  Dr. Feldman

26          [4] Medical records from the CORE Institute show that on January 23, 2012, March
27  1, 2012, and April 19, 2012, Plaintiff was prescribed oxycodone-acetaminophen by a
    physician assistant in addition to the medications prescribed by Dr. Roy.
28

1    further opined that in an 8-hour work day, the total amount of time Plaintiff can sit is 2-3

2    hours and the total amount of time she can stand/walk is 0-1 hour.  He opined that

3    Plaintiff will need to take unscheduled breaks of 1-2 minutes every 15 minutes.  He

4    opined that she can occasionally lift and carry up to 10 pounds, but never more, and she

5    has no limitations in doing repetitive reaching, handling, or fingering.  He further opined

6    that Plaintiff is likely to be absent more than four times a month as a result of her

7    impairments.

8          The ALJ found that the medical source statements from Drs. Roy and Feldman

9    were not supported by their own progress notes and appeared to be based on Plaintiff's

10   subjective statements.  These are legitimate, clear, and convincing reasons, supported by

11   substantial evidence in the record, for giving the medical source statements of Drs. Roy

12   and Feldman little or no weight.  Although the ALJ did not explicitly state that she had

13   considered Dr. Roy's mental assessment as well as his physical assessment, she cited the

14   exhibit numbers of both assessments, and therefore it can be assumed that she considered

15   both exhibits that she cited.  The ALJ did not explicitly state the degree of weight she

16   gave the opinions of these treating physicians, but it is plain from the context that the

17   ALJ gave them little or no weight.

18         **C.    The ALJ Did Not Err in Her Examination of the Vocational Expert.**

19         An ALJ may rely on a vocational expert's testimony that is based on a

20   hypothetical that contains all of the limitations the ALJ found credible and supported by

21   substantial evidence in the record.  *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir.

22   2014).  "However, if an ALJ's hypothetical is based on a residual functional capacity

23   assessment that does not include some of the claimant's limitations, the vocational

24   expert's testimony has no evidentiary value."  *Id.* (internal quotation marks and citation

25   omitted).

26         For reasons previously stated, the ALJ did not err by finding Plaintiff's testimony

27   regarding the severity of her symptoms and limitations less than fully credible or by

28   giving little weight to the opinions of Drs. Roy and Feldman.  The ALJ gave "some

- 13 -

1    weight" to the opinion of consultative examiner Ilyssa Swartout, Psy.D., regarding social

2    functioning, and limited Plaintiff to occasional contact with the public. The ALJ was not

3    required to pose a hypothetical to the vocational expert with limitations she did not find

4    credible and supported by substantial evidence in the record. Giving "some weight" to

5    Dr. Swartout's opinion did not require the ALJ to rely on a hypothetical posed to the

6    vocational expert by Plaintiff's counsel that included Dr. Swartout's opinion of

7    "moderate to marked" limitation in social functioning, especially when neither the

8    opinion nor the hypothetical distinguished "moderate" from "marked" limitation.

9         IT IS THEREFORE ORDERED that the final decision of the Commissioner of

10    Social Security is affirmed. The Clerk shall enter judgment accordingly and shall

11    terminate this case.

12         Dated this 12th day of June, 2015.

                                             Neil V. Wake
                                United States District Judge